**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LKQ CORPORATION, | |
| Plaintiff/Counter-Defendant, | No. 21 C 3022 |
| v. | Judge Thomas M. Durkin |
| ROBERT RUTLEDGE, | |
| Defendant/Counter-Plaintiff. | |

**MEMORANDUM OPINION AND ORDER**

LKQ Corporation brought this action against its former employee, Robert Rutledge, for breach of restricted stock unit agreements and restrictive covenant agreements. Rutledge brought counterclaims seeking declaratory judgment, as well as claims for unpaid wages and tortious interference. Both parties filed motions to dismiss which are currently before the Court. For the reasons that follow, Rutledge's motion to dismiss, R. 28, and LKQ's motion to dismiss, R. 12, are granted in part and denied in part.

**Background**

LKQ is a national supplier of various automobile parts to mechanical shops, repair shops, and other customers. Beginning in 2009, Rutledge worked as a plant manager for LKQ. Because of his role and access to LKQ's confidential information, he was designated as a "key employee" and was therefore eligible for grants of LKQ restricted stock. Between 2013 and 2020, Rutledge and LKQ entered into separate restricted stock unit agreements ("RSUAs") providing Rutledge with the right to

exercise shares of LKQ stock pursuant to certain terms and conditions. One such condition provided that, for nine months after his employment with LKQ ended, Rutledge:

> Shall not directly or indirectly … be employed by, engage or have any interest in any business which is or becomes competitive with [LKQ] subsidiaries or is or becomes otherwise prejudicial to or in conflict with the interests of [LKQ] or its subsidiaries…

R. 25 at 6. During his employment, Rutledge cashed in his restricted stock units and received approximately $317,507.02 as a result.

The RSUAs also contained a forfeiture clause, which provided that Rutledge would forfeit his restricted stock if he breached the terms and conditions:

> [T]he RSUs, the shares of common stock of the Company underlying the RSUs, or any proceeds received by the Key Person upon the sale of shares of common stock of the Company underlying the RSUs shall be forfeited by the Key Person to the Company without any consideration therefore, if the Key Person is not in compliance, at any time during the period commencing on the date of this Agreement and ending nine months following the termination of the Key Person's affiliation with the Company and/or its subsidiaries…

R. 25 at 7-8.

Separately, Rutledge and LKQ also entered into Confidentiality, Non-Competition, and Non-Solicitation Agreements ("RC Agreements") over the course of his employment. These agreements contain restrictions on Rutledge's employment for nine months after his departure from LKQ and within a 75-mile radius of the facility he formerly managed.

Upon voluntarily resigning from his position on April 14, 2021, Rutledge began working for Fenix Parts, Inc. On June 4, 2021, LKQ brought this action against

Rutledge for breach of contract and unjust enrichment, alleging he violated his RSUAs and RC Agreements by working for Fenix, which LKQ contends is a direct competitor. Rutledge filed a three-count counterclaim, seeking declaratory judgment on a number of issues, as well as alleging unpaid wages and tortious interference.

Both parties moved to dismiss the other's respective claims. Rutledge argues LKQ failed to state a claim for breach of the RSUAs or RC Agreements and that its unjust enrichment claim is barred. LKQ argues Rutledge's counterclaims are duplicative and that he failed to sufficiently plead them.

## Legal Standard

A Rule 12(b)(6) motion challenges "the sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Analysis

## I. Rutledge's Motion to Dismiss

Rutledge argues LKQ's complaint should be dismissed in its entirety because the RSUAs and RC Agreements are unenforceable as a matter of law, and the unjust enrichment claim is barred because the parties' relationship was governed by a contract.

### A. Count I: Breach of the RSUAs

#### i. Choice of Law

As a preliminary matter, the RSUAs have a choice-of-law provision requiring the application of Delaware law. R. 31 at 5. Rutledge briefly argues Delaware has no substantial relationship to the parties and thus Illinois law has a should apply. R. 29 at 6.

A federal court exercising jurisdiction over state-law claims applies the choice of law rules of the forum state. *McCoy v. Iberdrola Renerables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). In Illinois, a contract's choice of law provision governs unless: (1) the chosen state has no substantial relationship to the parties or the transaction; or (2) application of the chosen law would be contrary to fundamental public policy of a state with a materially greater interest in the issue in dispute. *General Electric Co.*

*v. Uptake Technologies*, 394 F. Supp. 3d 815, 825 (N.D. Ill. 2019) (citing *Old Republic Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, 906 N.E.2d 630, 636 (Ill. App. Ct. 2009)). Before undertaking a choice-of-law analysis, the party seeking the determination "bears the burden of demonstrating a conflict, i.e., that there exists a difference in the law that will make a difference in the outcome." *Id.* (citing *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 906 (Ill. 2014)). *See also Garrard v. Rust-Oleum Corp.*, 2021 WL 5906063, at *5 (N.D. Ill. Dec. 14, 2021).

Here, Rutledge has not shown a conflict exists between Delaware and Illinois law such that it would make a difference in the outcome. He argues Delaware has no relationship to the parties or the transaction because he is a Florida resident and LKQ maintains its headquarters in Illinois. R. 29 at 6. He then contends that "Illinois' policy of protecting employees to a greater extent than other states justifies applying Illinois law," but he does not offer any explanation as to the differences in how Delaware and Illinois "protect employees." *Id.* Importantly, Rutledge later argues that the same outcome results from either Delaware or Illinois law. R. 29 at 6, 8.

LKQ is incorporated in Delaware, and sells many of its goods there. R. 31 at 5. Rutledge offers nothing to overcome these facts, and even if the Court were to lend more weight to his vague allegations that the policies of each state differ, small differences do not justify overriding the parties' original choice to have Delaware law govern. *See Vencor, Inc. v. Webb*, 33 F.3d 840, 845 (7th Cir. 1994)).

Because Rutledge has not shown a legitimate difference between the two states' laws, or that applying Delaware law would be contrary to a fundamental

public policy of Illinois, the Court applies Delaware law, as provided for in the contract. *See Maroon Society, Inc. v. Unison Consulting, Inc.*, 2021 WL 2809515 (N.D. Ill. July 6, 2021) (Court declined to apply California law because although the plaintiff "focuse[d] on California's 'materially greater interest,'" he did not "identify what fundamental policy of California is at issue or how applying Illinois law would be contrary to that policy.").

   ii. <u>Merits</u>

  Rutledge first argues that the non-compete provisions in the RSUAs are overbroad and unenforceable. A post-employment restrictive covenant is reasonable only if it: (1) is no greater than required for the protection of a legitimate business interest of the employer; (2) does not impose undue hardship on the employee; and (3) is not injurious to the public. *FP UC Holdings, LLC v. Hamilton*, 2020 WL 1492783, at \*6-7 (Del. Ct. Chan. Mar. 27, 2020); *see also Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396-97 (Ill. 2011). The inquiry is a fact-intensive one, and "unless the covenant is patently unreasonable, the parties must be given a full opportunity to develop the necessary evidentiary record.*" Allied Waste Servs., LLC v. Tibble*, 177 F. Supp. 3d 1103, 1110 (N.D. Ill. 2016).

  Here, the non-compete provision of the RSUAs purports to bar Rutledge from "directly or indirectly, be[ing] employed by, engag[ing] or hav[ing] any interest in any business" which competes with LKQ or its subsidiaries for a period of nine months after his departure from LKQ. R. 25 at 6. The business of LKQ is selling various auto parts to repair and mechanic shops nationwide. The Court acknowledges the

6

reasoning in Rutledge's argument—barring him from working for any competitor of LKQ in virtually any capacity appears to be a broad restriction. But the provision is subject to a temporal limit—nine months from the date of Rutledge's departure from LKQ. This durational limitation weighs in favor of denying the motion to dismiss. *See Allied Waste*, 177 F. Supp. 3d at 1110. To determine that the provision is overbroad at the pleading stage would be premature. Whether such restrictions are reasonable "requires the Court to make a fact-based determination" that is often "not appropriate" at the motion to dismiss stage. *Nortek Products Ltd. v. GNA Group, Inc.*, 2011 WL 2110043, at *4 (N.D. Ill. May 24, 2011) (collecting cases); *see also Integrated Genomics, Inc. v. Kyrpides*, 2008 WL 630605, at *7 (N.D. Ill. Mar. 4, 2008) (holding that, even though the non-compete agreement at issue was unlimited in both geographical scope and duration, it would be inappropriate to determine its reasonableness on a motion to dismiss).[1]

The reasonableness of the RSUAs hinges on a variety of factual issues that the Court cannot meaningfully address on the limited record currently before it, and that

---

[1] Rutledge relies on *Hay Group v. Bassick*, 2005 WL 2420415 (N.D. Ill. Sept. 29, 2005), to support his argument that the non-compete provision in the RSUAs is overbroad on its face. *Hay Group* was decided at the summary judgment stage, and the court thus had the entire evidentiary record in front of it. The Court here does not yet have that benefit. Rutledge also relies on *Tasktop Technologies US Inc. v. McGowan*, 2018 4938570 (D. Del. Oct. 11, 2018). *Tasktop* involved a motion for a preliminary injunction, which the court denied because the plaintiff had not shown it was likely to succeed on the merits. Here, LKQ does not need to meet that bar. It only needs to allege a plausible claim for relief. The *Tasktop* court specifically noted it was examining the "specific factual circumstances to determine enforceability", and, notably, held a hearing and allowed limited discovery on the contract provisions before making its ruling. *Id.* at *3-5. This further reinforces that discovery is necessary here.

the parties do not shed light on in their briefings. For example, relevant to the inquiry is how many companies fall within the definition of "competitor" under the RSUAs. *See Allied Waste*, at 1110 (denying motion to dismiss to determine, among other things, how many companies are actually competitors under the challenged agreement).

Further illustrating the need for discovery is LKQ's position that the RSUAs do not contain a non-compete agreement, and that the provision at issue here is actually a forfeiture clause, as it provides for a forfeiture of Rutledge's shares of common stock if he is not in compliance with the remainder of the provision. R. 31 at 6-7. Because it is a forfeiture provision and not a non-compete, LKQ argues, the Court should decline to even undertake a reasonableness analysis. LKQ cites *JPMorgan Chase & Co. v. Pierce*, 517 F. Supp. 954, 958 (E.D. Mich. 2007), to argue there is a distinction between non-compete provisions and those calling for forfeiture of benefits. *JPMorgan* was also decided at the summary judgment stage and the parties had the benefit of discovery as to the provisions in question before the Court made its determination. The same is necessary here. At this stage, the provision is not so patently unreasonable as to warrant dismissal, and there is not enough factual development in the record for the Court to determine the extent of its enforceability, or whether it is a forfeiture provision, a non-compete provision, or both. Such a determination will be appropriate at a later stage in the proceedings.

### B. Count II: Breach of the RC Agreements

During his employment, Rutledge also entered into RC Agreements which imposed non-compete and non-solicitation covenants on his employment for a period of nine months after leaving LKQ and within a 75-mile radius of the facility he formerly managed. The parties agree Illinois law applies to LKQ's claim of breach of the RC Agreements. Rutledge argues the non-compete and non-solicitation provisions are unenforceable.

Under Illinois law, "[a] restrictive covenant is enforceable if the terms of the agreement are 'reasonable and necessary to protect a legitimate business interest of the employer,' a determination that turns on the facts and circumstances of each case." *LKQ Corp. v. Transtar Indus.*, No. 16-cv-499, slip. op. at 2 (N.D. Ill. Apr. 8, 2016) (quoting *Nortek Products*, 2011 WL 2110043, at \*3); *see also Outsource Int'l, Inc. v. Barton*, 192 F.3d 662, 666 (7th Cir. 1999). A restrictive covenant's reasonableness is measured by its hardship on the employee, its affect upon the general public, and the reasonableness of the time, territory, and activity restrictions. *See Liautaud v. Liautaud*, 221 F.3d 981, 987 (7th Cir. 2000).

Rutledge argues the RC Agreements are overbroad in scope and constitute an unreasonable restraint of trade, rendering them unenforceable as a matter of law. For largely the same reasons as those articulated in response to Rutledge's motion to dismiss Count I, the Court does not find this to be one of the "extreme cases" warranting a finding of invalidity at the pleading stage. *See Abbott-Interfast Corp. v. Harkabus*, 619 N.E.2d 1337, 1343 (Ill. App. Ct. 1993) ("Although courts closely

scrutinize noncompetition agreements…only in extreme cases will a court find such an agreement invalid on its face."). The RC Agreement is temporally limited to a period of nine months and geographically limited to a distance of 75 miles. Again, these limitations weigh against dismissing the claims based on unenforceability. And, regarding the non-solicitation agreement contained in the RC Agreements, the inquiry is "highly fact-specific and intensive," and may not be appropriate until "the circumstances have been fleshed out through litigation." *Aon plc v. Infinite Equity, Inc.*, 2021 WL 4034068, at *16 (N.D. Ill. Sept. 3, 2021); *see also Baird & Warner Residential Sales, Inc. v. Mazzone*, 893 N.E.2d 1010, 1015 (Ill. App. Ct. 2008) (declining to rule on the enforceability of a non-solicitation covenant "without additional evidence that does not appear on the face of the complaint"). The same is true for Rutledge's argument that LKQ does not have a legitimate business interest that it seeks to protect through the agreements. *See AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 923 (N.D. Ill. 2001) (holding that the legitimacy of an employer's business interest is "an inherently fact-based determination that is not appropriate at the motion to dismiss stage").

At the pleading stage, LKQ has sufficiently pled that it and Rutledge were parties to an enforceable contract which Rutledge breached. Whether the restrictions imposed on Rutledge are reasonable requires the Court to make a fact-based

determination that is not appropriate at this stage. Rutledge's motion to dismiss Count II is denied.[2]

### C. Count III: Unjust Enrichment

In its unjust enrichment claim, LKQ seeks to recover the amounts in equity compensation under the RSUAs that it contends Rutledge unjustly retained to LKQ's detriment. Rutledge argues LKQ's claim for unjust enrichment is improper because it addresses the same conduct covered under the contract.

LKQ argues it is pleading an alternative theory of recovery, which is permitted under Federal Rule of Civil Procedure 8(d)(3), allowing a party to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). However, in Illinois, recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and the defendant. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013). To put it another way, a plaintiff may plead breach of contract in one count and unjust enrichment in another under Rule 8, but "allegations of an express contract which governs" the parties' relationship may not be included in the unjust enrichment count. *Allergase, Inc. v. Walgreen Co.*, 2017 WL 66819 (N.D. Ill. Jan. 6, 2017) (quoting *Cohen*, 735 F.3d at 615).

---

[2] Rutledge also moves to dismiss Count IV, a claim for injunctive relief, based on his argument that it is tied to Counts I and II which he contends fail as a matter of law. Because the Court is declining to dismiss Counts I and II, it also declines to dismiss Count IV.

The problem for LKQ is that it argues, throughout the entirety of its complaint, that its relationship with Rutledge is governed by the employment contracts, and then incorporates each of those allegations in its claim for unjust enrichment. R. 25 at 20. "Where unjust enrichment claims incorporate by reference allegations of the existence of a contract between the parties, courts will dismiss the unjust enrichment claim." *Gociman v. Loyola Univ.*, 515 F. Supp. 3d 861, 871 (N.D. Ill. 2021) (citing *Thurgood v. Sears, Roebuck, and Co.*, 2006 WL 3302640, at *5 (N.D. Ill. Nov. 9, 2006)); *see also MD Spine Solutions, LLC v. UnitedHealth Group, Inc.*, 2022 WL 124160, at *4 (N.D. Ill. Jan. 13, 2022) (even though plaintiff argued its unjust enrichment theory was pled in the alternative, it incorporated by reference its allegations that a contract existed, warranting dismissal with leave to amend).[3]

A court in this district has encountered similar facts and dismissed an unjust enrichment claim because of the same problem present here. In *Stericycle v. Carney*, the parties disputed the reasonableness of a restrictive covenant the employee was alleged to have breached. *Stericycle*, 2013 WL 3671288, at *4 (N.D. Ill. July 12, 2013). The unjust enrichment claim alleged the plaintiff granted the former employee stock options as consideration for the restrictive covenants in the employment agreements, and that "[b]ecause of [the employee's] failure to adhere to his post-employment contractual obligations," the employee had been unjustly enriched by "his receipt and

---

[3] There are cases in which Illinois courts allowed unjust enrichment claims based on payments alleged to be unjustly retained, but only where such payments are not contemplated by the contract. *See, e.g., Clean Harbors Inc. v. Illinois International, Port District*, 309 F. Supp. 3d 556, 568-69 (N.D. Ill. 2018). Here, the payments LKQ is seeking to recover are exactly what the contract provided for.

12

retention of such proceeds." *Id*. at *8. The court explained in its ruling that a plaintiff "may not include specific references to a governing contract in a count for unjust enrichment." *Id*. (collecting cases). Because LKQ incorporates by reference its allegations of a contract between the parties in its unjust enrichment claim, the claim is not properly pled in the alternative, and the motion to dismiss Count III is granted.

## II.    LKQ's Motion to Dismiss

LKQ moves to dismiss Rutledge's counterclaims for declaratory judgment and unpaid wages, arguing they are not yet ripe and are duplicative of issues already before the Court as part of LKQ's lawsuit.

### A. Counterclaim I: Declaratory Judgment

In his first counterclaim, Rutledge seeks declaratory judgment on the following issues:

> (1) "Are the unsigned contracts enforceable? In other words, does LKQ have any evidence that Rutledge entered into these unsigned contracts?"; (2) "If the unsigned contracts were mutually agreed upon, are any of them unenforceable due to lack of consideration? If both the 'Restrictive Stock Unit Agreements' and the 'Confidentiality, Non-Competition and Non-Solicitation Agreements' are valid and enforceable, which law governs Plaintiff's non-compete and non-solicitation obligations?"; and (3) "[W]hich law governs the parties' employment relationship generally? In other words, which Wage Act applies to Rutledge's Counterclaim (e.g., Illinois Wage Act, 820 ILCS 115; Delaware Wage Payment and Collection Act, 19 Del. C. [SEC] 1103; Florida Unpaid Wage Claim, Fla. Stat. [SEC] 448.08).".

R. 10 at 39-40. LKQ argues all of these questions are issues already before the Court and the counterclaim is thus duplicative.

Where the counterclaim for declaratory judgment "essentially presents nothing more than the flip side of [plaintiff's] claims," courts often dismiss them. *See,*

13

*e.g., Bodum USA, Inc. v. A Top New Casting Inc.*, 2016 WL 4440258, at *1-2 (N.D. Ill. Aug. 23, 2016). In such cases, courts have found that the counterclaims merely mirror the initial claim and add "nothing to the case beyond the issues [the plaintiff's] claims call upon [the court] to adjudicate." *Id*. Further, "[c]ourts routinely dismiss counterclaims that seek to generate an independent piece of litigation out of issues that are already before the court; this includes counterclaims that merely restate an affirmative defense, as well as those which simply state the opposite of the complaint." *Intercon Solutions, Inc. v. Basel Action Network*, 969 F. Supp. 1026, 1065 (N.D. Ill. 2013) (collecting cases).

Here, Rutledge's first declaratory judgment request immediately reveals itself as duplicative. Rutledge asks the Court to determine the enforceability of the contracts—so does LKQ, in its complaint. LKQ simply argues they are enforceable, while Rutledge, of course, argues they are not. That issue will necessarily be resolved through LKQ's lawsuit. Rutledge then asks whether LKQ has evidence that Rutledge entered into the agreements. LKQ alleges through its complaint that it does have such evidence, so that issue will be determined once the parties face an evidentiary standard.

The second declaratory judgment request again seeks an enforceability determination, which the Court has already explained will be made once the parties have the benefit of discovery, and which will necessarily be ruled on in LKQ's lawsuit. As to the law governing each provision, the parties agree that Illinois law governs the RC Agreements. And, as the Court outlined in Sec. I.A.i., *supra*, Rutledge presented

14

no differences between the law the contract provides for (Delaware) and Illinois law, thus failing to provide the Court with a reason to depart from the parties' agreed-upon choice of law. That issue has been decided through disposition of Rutledge's motion to dismiss, and therefore is no longer in dispute.

Finally, Rutledge's third declaratory claim seeks clarification as to which law governs the parties' relationship "generally." The Court has determined that Delaware law governs the RSUAs, and the parties agree Illinois law governs the RC Agreements. As to any other choice-of-law issues which may arise, the Court need not undertake a choice-of-law analysis unless the parties "present an outcome-determinative conflict between the different states on the issue." *See Rust-Oleum*, 2021 WL 5906063, at *5; *see also Bd. of Forensic Document Examiners*, 922 F.3d at 831 (noting that a district court is required to engage in a choice-of-law analysis only where there is a conflict such that a difference in the law will make a difference in the outcome). Rutledge does not identify any choice-of-law issues other than those already addressed by the Court. If more arise, the parties are of course free to inform the Court of the conflicts between the relevant laws.

Rutledge's declaratory judgment counterclaim is duplicative and will be resolved through the resolution of LKQ's claims against him. The motion to dismiss the declaratory judgment counterclaim is granted.

### B. Counterclaim II: Unpaid Wages

Rutledge's second counterclaim for unpaid wages presents a different situation.[4] Rutledge argues he is owed unpaid compensation from LKQ in the form of an equity interest that was to vest periodically pursuant to a provision in the RSUAs. R. 10 at 40-41. Pursuant to that agreement, LKQ provided Rutledge with restricted stock units subject to certain conditions (including the non-compete provision at issue). The contract's forfeiture provision provides that any RSUs that remained unvested at the time of Rutledge's separation from LKQ are forfeited to the company. Rutledge argues the forfeiture provision is unenforceable, and thus he is owed unpaid wages pursuant to the equity interest provisions. This counterclaim is not duplicative, because it will not necessarily be decided via disposition of LKQ's lawsuit. If the Court were to rule that Rutledge was not in breach of his employment contracts, for example, that would not resolve the issue of whether he is owed unpaid wages, because that question requires a different analysis of the equity interest provision and its vesting procedures. LKQ argues the forfeiture provision is enforceable, and thus Rutledge is not owed any unpaid compensation. As already stated, the enforceability of the forfeiture provision will be determined when the Court has the evidentiary record in front of it. For now, Rutledge has sufficiently pled

---

[4] As an initial matter, Rutledge seeks a determination as to what law applies to his counterclaim for unpaid wages. He makes no attempt to differentiate the laws of Delaware, Florida, or Illinois (although he focuses primarily on Illinois law), and simply states that under any of the states' respective wage acts, he has stated a claim. LKQ similarly does not present the Court with differences in the various laws. Thus, there is no reason for the Court to engage in a choice-of-law analysis at this stage.

that an employment agreement existed under which he was entitled to compensation that he did not receive. That is enough at this stage. The motion to dismiss Rutledge's counterclaim for unpaid wages is denied.

As a final note, the parties agree to dismiss Rutledge's third counterclaim for tortious interference. R. 13 at 10; R. 15 at 10. The parties dispute, however, whether the dismissal should be with or without prejudice. At this stage, the Court dismisses Rutledge's tortious interference claim without prejudice, as LKQ has not shown the claim would fail as a matter of law in all circumstances, or in state court.

## Conclusion

For the foregoing reasons, Rutledge's motion to dismiss, R. 28, is granted in part and denied in part. The unjust enrichment claim is dismissed without prejudice. The motion is otherwise denied. LKQ's motion to dismiss, R. 12, is granted in part and denied in part. The declaratory judgment counterclaims are dismissed with prejudice and the tortious interference counterclaim is dismissed without prejudice. The motion is otherwise denied.

ENTERED:

_Thomas M Durkin_

Honorable Thomas M. Durkin
United States District Judge

Dated: May 27, 2022

17